**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PEDERNAL PROPERTIES, LLC, | |
| Plaintiff, | |
| vs. | Case No. 22-CV-00151-TCK-MTS |
| MARSH USA, INC.,<br>MARKEL AMERICAN INSURANCE<br>COMPANY, and MARKEL SERVICE, INC., | |
| Defendants. | |

---

### DEFENDANT MARSH USA, INC.'S MOTION FOR SUMMARY JUDGMENT

---

**GABLEGOTWALS**

R. Trent Shores, OBA #19705
Barrett L. Powers, OBA #32485
tshores@gablelaw.com
bpowers@gablelaw.com
110 N. Elgin Ave., Suite 200
Tulsa, Oklahoma 74120

**QUARLES & BRADY LLP**

Joshua Maggard (*pro hac vice*)
Joshua.maggard@quarles.com
Joseph Poehlmann (*pro hac vice*)
joseph.poehlmann@quarles.com
411 East Wisconsin Avenue, Suite 2400
Milwaukee, Wisconsin 53202
(414) 277-5000 | Fax: (414) 271-3552

***Attorneys for Defendant Marsh USA, Inc.***

**TABLE OF CONTENTS**

OVERVIEW OF ARGUMENT ................................................................................. 1

STATE OF UNDISPUTED FACTS ....................................................................... 3

    Plaintiff's Property and the Markel Insurance Policy .......................................... 3

    Plaintiff Suffers a Loss at the Property................................................................ 4

    Markel Denies Plaintiff's Coverage Claim ......................................................... 4

    Plaintiff Sells the Property While this Litigation is Pending .............................. 5

MOTION FOR SUMMARY JUDGMENT STANDARD ...................................... 6

ARGUMENTS AND AUTHORITIES ................................................................... 7

I.  THE COURT SHOULD GRANT SUMMARY JUDGMENT
    AGAINST PLAINTIFF ON ITS PROFESSIONAL NEGLIGENCE
    CLAIM AGAINST MARSH (COUNT II) .................................................... 7

    A.  Oklahoma Law bars claims against insurance brokers that are
        based on a failure to advise the insured about its insurance coverage .............. 8

    B.  Plaintiff failed to provide the expert testimony required
        to establish the applicable standard of care and Marsh's alleged breach .......... 11

II.  IF MARSH IS NOT DISMISSED, THEN THE COURT SHOULD
    EXCLUDE TWO CATEGORIES OF PLAINTIFF'S ALLEGED
    DAMAGES TO SIMPLIFY QUESTIONS FOR THE JURY AT TRIAL ............. 13

    A.  The Court should find that Plaintiff cannot pursue "damages"
        for (1) repairs that it never made and will never make and
        (2) attorney's fees ............................................................................................. 13

    B.  The Court should limit Plaintiff's recoverable damages to the
        value of the Property before the Loss, minus the value
        Plaintiff received in the sale of the Property ..................................................... 15

        i.   Plaintiff listed the Property at $495,000 before the Loss,
            and Plaintiff testified this was the maximum damages
            that it was seeking in this litigation ......................................................... 15

        ii.  During this litigation, Plaintiff sold the damaged Property
            and received over $118,000 in value ...................................................... 15

        iii. The Court should hold that the proper measure of damages
            is the value of the undamaged Property less the value that
            Plaintiff received when selling the damaged Property. ............................ 16

CONCLUSION .................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Alabassi v. T.I.B. Ins. Brokers, Inc.*,
  825 F. App'x 593 (10th Cir. 2020) (applying Colorado law).................................... 12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................ 6

*Boxberger v. Martin*,
  552 P.2d 370 (Okla. 1976)............................................................................. 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................ 6

*Cook v. McGraw Davisson Stewart, LLC*,
  496 P.3d 1006 (Okla. Civ. App. 2021)............................................................ 11

*Cosper v. Farmers Ins. Co.*,
  309 P.3d 147 (Okla. Civ. App. 2013)................................................................ 9

*HSRE-PEP I, LLC v. HSRE-PEP Crimson Park LLC*,
  304 P.3d 461 (Okla. Civ. App. 2013)............................................................... 14

*Johnson v. Hillcrest Health Ctr., Inc.*,
  70 P.3d 811 (Okla. 2003) .............................................................................. 11

*Lincoln Nat. Life Ins. Co. v. Cowboy Athletics, Inc.*,
  934 F. Supp. 2d 884 (N.D. Tex. 2012) (applying Oklahoma law) ........................... 9

*Lincoln Nat. Life Ins. Co. v. Mgmt. Comp. Grp. Lee Inc.*,
  532 F. App'x 480 (5th Cir. 2013) .................................................................... 10

*Mueggenborg v. Ellis*,
  55 P.3d 452 (Okla. Civ. App. 2002)................................................................ 10

*Nat'l Fire Ins. Co. v. McCoy*,
  205 Okla. 511, 239 P.2d 428 (Okla. 1951)....................................................... 10

*Rayfield Properties, LLC v. Bus. Insurers of Carolinas, Inc.*,
  224 N.C. App. 398 (2012) ............................................................................. 10

*Rotan v. Farmers Ins. Group of Cos.*,
  83 P.3d 894 (Okla. Civ. App. 2004).................................................................. 9

*Smith v. Baptist Found. of*,
  50 P.3d 1132 (Okla. 2002)............................................................................. 10

*Swickey v. Silvey Cos.*,
  979 P.2d 266 (Okla. Civ. App. 1999)................................................................ 9

*Truesdell v. State Farm Fire & Cas. Co.*,
  960 F. Supp. 1511 (N.D. Okla. 1997)......................................................... 18, 19

*United States v. Cartright*,
   411 U.S. 546 (1973) ................................................................................................. 17

*Vickers v. Progressive N. Ins. Co.*,
   353 F. Supp. 3d 1153 (N.D. Okla. 2018) ................................................................. 10

Rules

Fed. R. Civ. P. 56(a) ...................................................................................................... 6

## DEFENDANT MARSH USA, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant Marsh USA, Inc. ("Marsh") requests that this Court enter summary judgment against Plaintiff Pedernal Properties, LLC, and in favor of Marsh regarding (1) Plaintiff's claim for negligence against Marsh and (2) limiting Plaintiff's recoverable damages. Plaintiff's claims are barred under Oklahoma law and Marsh should be dismissed. Additionally, Plaintiff is pursuing two categories of damages that are not recoverable as a matter of law, and the Court should enter an order barring these categories in order to streamline the issues for trial.

### OVERVIEW OF ARGUMENT

Plaintiff owned a commercial property ("Property") in Tulsa that experienced significant water damage as a result of a burst pipe in February 2020. Defendant Markel American Insurance Company ("Markel") denied Plaintiff's coverage claim because it determined the Property was vacant, or without a tenant or contents, for more than sixty days after the Property was added to the policy's schedule of coverages. In this action, Plaintiff has sued Markel for "breach of contract/bad faith," alleging that it is entitled to the full coverage limits in the policy that Markel issued (Count I).

If the Court upholds Markel's coverage denial, then Plaintiff alleges in the alternative that Marsh is liable for "agent negligence" (Count II). Plaintiff raises several allegations specific to Marsh. First, Plaintiff claims that Marsh failed to adequately advise it of the policy condition that limits coverage for vacant property when Marsh originally added the property to the policy upon Plaintiff's request. Second, Plaintiff claims that Marsh should have alerted Plaintiff to the vacancy condition so that Plaintiff could have tried to modify the coverage available for vacant property. Finally, Plaintiff claims that Marsh's conduct fell below the industry standard of care that applies to insurance brokers, thereby causing it damages.

-1-

Plaintiff's allegations against Marsh fail, and the Court should grant summary judgment to Marsh on Count II, for two reasons.

*First*, Oklahoma law is clear that the standard of care applicable to an insurance broker ***excludes*** any duty to advise the insured regarding the adequacy of coverage. Here, that is precisely what Plaintiff alleges Marsh failed to do—advise it of the vacancy provision in the policy and recommend potential solutions if sixty days were too short of a window. But Oklahoma law places the burden on Plaintiff to read and understand its policy and any potential gaps or exposures thereunder. Plaintiff's attempt to pass off its burden onto Marsh is disallowed under binding Oklahoma law.

*Second*, Plaintiff must offer expert testimony to establish (1) the applicable standard of care and (2) that Marsh's conduct fell below that standard of care, causing Plaintiff's alleged damages. Here, Plaintiff made the tactical decision not to engage any expert to establish its burden. Under Tenth Circuit precedent, the Court should grant summary judgment in favor of Marsh and dismiss it with prejudice.

*Finally*, even if the Court does not grant summary judgment to Marsh on Count II, it should hold that Plaintiff is barred from seeking two categories of its alleged damages—the alleged "repair cost" of the Property and its attorney's fees. Regarding repair costs, Plaintiff admits that it never incurred any covered costs, and because it sold the Property months ago, there is no scenario in which Plaintiff will *ever* incur any repair costs. Regarding attorney's fees, there is no statutory or contractual basis for Plaintiff to recover fees from Marsh in this action.

As explained in detail below, Marsh respectfully requests that the Court grant its motion for summary judgment.

## STATEMENT OF UNDISPUTED FACTS

### *Plaintiff's Property and the Markel Insurance Policy*

1.       Plaintiff owned several commercial buildings in the Tulsa, Oklahoma area.[1] Marsh was Plaintiff's insurance broker during the relevant period.[2] In connection with those properties, and with Marsh's assistance, Markel issued a commercial property insurance policy to Plaintiff bearing the policy number MKLM7I0052068 and covering the period June 1, 2020 to June 1, 2021 (hereafter, "Policy").[3]

2.       Plaintiff owned real estate located at 1602 W. 21st Street in Tulsa that is the subject of this lawsuit (the "Property").[4] The Property was not originally included in the Policy because it was being insured by the tenant to whom Plaintiff had leased the Property.[5] However, on November 30, 2020, the tenants ended their lease, requiring Plaintiff to add the Property to the Policy's schedule of insured properties.[6]

3.       Plaintiff contacted Marsh for assistance, and Marsh, in turn, conveyed Plaintiff's request to Markel.[7] Markel subsequently added the Property to the Policy, reflected by its issuance of a Policy Change Endorsement formalizing the addition in exchange for Plaintiff's additional premium payment.[8] As a result, the Property became insured by the Policy effective

---

[1] Ex. 2 (hereafter, "Ballenger Dep.") at 13:11-19.

[2] Dkt. 2, Ex. 1 (hereafter, "Complaint"), ¶¶ 14-15.

[3] Complaint, ¶ 10. Ex. 3 (the Policy). The Policy was issued to Plaintiff's parent company, Flint Resources Company, LLC, and covered Plaintiff as an insured.

[4] Ex. 4 (hereafter, "Policy Change Endorsement").

[5] Ex. 5.

[6] Ex. 5.

[7] Ex. 5, Ex. 6.

[8] Ex. 4, Ex. 6.

November 30, 2020, and any resulting losses were subject to the terms and conditions of the Policy.[9]

### *Plaintiff Suffers a Loss at the Property*

4.      On February 19, 2021, the building located on the Property experienced frozen pipes during an emergency winter weather event that resulted in significant water damage (hereafter, "Loss").[10] Marsh, in turn, reported the Loss to Markel under the Policy.[11]

5.      Plaintiff hired a contractor to remove wet carpeting and damaged ceiling insulation and tiles and then a plumber to cap a pipe.[12] Plaintiff's total expenditures in response to the Loss are $16,145.91, which are less than the Policy's $25,000 deductible.[13]

### *Markel Denies Plaintiff's Coverage Claim*

6.      Markel ultimately denied coverage for the Loss under the Policy.[14] Markel primarily relied on its conclusion that the Property had been vacant or unoccupied for more than sixty consecutive days from the time it was added to the Policy, thereby excluding it from coverage.[15] Although the Property was covered by the Policy effective November 30, 2020, Plaintiff was deemed to have not occupied the building because its prior tenant vacated more than sixty days before the loss.

7.      Markel invoked the following language in the Policy to deny coverage:[16]

---

[9] Policy Change Endorsement.

[10] Complaint, ¶ 7. *See also* Ex. 7.

[11] Ex. 8.

[12] Ex. 9 (hereafter, "Plaintiff Dep.") at 19:4-21:6; Ex. 10.

[13] Ex. 10. Plaintiff understood its costs were not recoverable. Plaintiff Dep. at 21:2-6, 78:14-24.

[14] Ex. 11.

[15] Ex. 11.

[16] Policy at 70; Ex. 11.

15.   **Vacancy – Unoccupancy –** "We" do not pay for loss caused by . . . water damage occurring while the building or structure has been:

    a.   vacant for more than 60 consecutive days; or

    b.   unoccupied for more than;

        1)   60 consecutive days; or

        2)   the usual or incidental unoccupancy period for a "covered location";

        whichever is longer.

Unoccupied means that the customary activities or operations at a "covered location" are suspended, but business personal property has not been removed. The building or structure will be considered vacant and not unoccupied when the occupants have moved, leaving the building or structure empty or containing only limited business personal property. Buildings or structures under construction are not considered vacant or unoccupied.

8.   Markel also reserved its right to raise other defenses, including those it had previously raised as potentially precluding coverage of the Loss.[17]

### Plaintiff Sells the Property While this Litigation is Pending

9.   Prior to the Loss, Plaintiff listed the Property for sale at $495,000.[18] The Property did not have any showings and did not receive any offers before the Loss.[19]

10.   After the Loss, Plaintiff relisted the Property for $100,000.[20] It then received an offer for the asking price, with the prospective buyer taking the Property "as is, where is[.]"[21] Plaintiff rejected the offer.[22]

---

[17] Ex. 11.

[18] Ex. 12.

[19] Ex. 13; Plaintiff Dep. at 28:1-30:16 (confirming accuracy of broker activity report).

[20] Ex. 14.

[21] Ex. 15 (real estate broker conveying $100,000 offer for Property as-is), Ex. 16, Ex. 17, Ex. 18 (reporting "$100,000" buyer for Property "as is-where is").

[22] Ex. 16, Ex. 17, Ex. 18, Ex. 19 (Plaintiff informing real estate broker that $100,000 offer could not be accepted "until lawsuits are resolved.").

11.     Subsequently, Plaintiff accepted another offer to purchase the Property as-is, where-is, but as part of a larger transaction involving three other Plaintiff-owned properties.[23] The total sale price was $5.4 million with no specific conditions attached to the Property.[24] The transaction closed on April 6, 2023.[25]

## MOTION FOR SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where evidence is such that no reasonable jury could return a verdict for the non-moving party, the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of a genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'" to avoid summary judgment being granted. *Id.* at 324.

---

[23] Ex. 20, Ex. 21.

[24] Ex. 20, Ex. 21, Ex. 22.

[25] Ex. 20, Ex. 21.

## ARGUMENTS AND AUTHORITIES

I.     **THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST PLAINTIFF ON ITS PROFESSIONAL NEGLIGENCE CLAIM AGAINST MARSH (COUNT II).**

Plaintiff's sole claim against Marsh is for professional negligence, which it pleads in the alternative under Count II. It pleads that Marsh "breached its duty to properly inform" Markel "of Plaintiff's situation and its duty to procure for Plaintiff the appropriate coverage and take reasonable steps to make sure Plaintiff was provided the insurance coverage it paid premiums to Defendant Marsh USA, Inc."[26]

Specifically, Plaintiff faults Marsh for failing to advise it at the time the Property was added that the Policy's vacancy condition might eventually alter the applicable coverage, because Plaintiff had "told representatives of Marsh the building was vacant and advised appropriate coverage was needed. Marsh had previously provided coverage for the vacant buildings in the past."[27] Plaintiff alleges that Marsh incorrectly "advised" it that "coverage was in place[,]" only to have Markel deny coverage due to the Property being deemed "vacant" for more than sixty days.[28] Plaintiff's representative testified that the claim against Marsh arises from having not "advise[d]" Plaintiff of the vacancy condition in the Policy, and contending that it was Marsh's obligation, not Plaintiff's, to "read the policy" for potentially relevant conditions.[29] Plaintiff contends that Marsh's alleged conduct fell below the standard of care applicable to Marsh as its insurance professional.

---

[26] Complaint, ¶ 14.

[27] Ex. 23 at Interrogatory No. 4.

[28] *Id.* at Interrogatory No. 2.

[29] Ballenger Dep. at 21:11-14.

However, Plaintiff's claim against Marsh is barred for two reasons: (1) Oklahoma law bars claims against insurance brokers based on a "failure to advise," which is exactly what Plaintiff alleges here, and (2) Tenth Circuit precedent requires Plaintiff to provide expert testimony to meet its burden, but Plaintiff failed to disclose any expert.

### A.  Oklahoma law bars claims against insurance brokers that are based on a failure to advise the insured about its insurance coverage.

Plaintiff sues Marsh for allegedly violating a standard of care that actually does not apply to Marsh as a matter of Oklahoma law. Specifically, Plaintiff claims that although Marsh added the Property to the Policy, it should have *also advised* Plaintiff that this coverage would only apply to a vacant building for sixty days and then *subsequently obtained a coverage extension* when that 60 day period expired.

But Oklahoma law is clear that (1) Marsh's sole duty was to obtain the coverage requested, which it did, (2) that Plaintiff, not Marsh, had the duty to review its Policy, and (3) that Marsh had no duty to advise Plaintiff to seek any additional coverage.

Plaintiff's Count II falls squarely into the category of claims brought against an insurance broker alleging inadequate advice, which Oklahoma law directly bars. Plaintiff alleges that Marsh failed to obtain coverage for the Property because Markel denied coverage on the basis that the Property had been vacant for 60 days prior to the Loss. But there is no dispute that Marsh fully complied with Plaintiff's specific request *to add the Property to the Policy*, which was confirmed by the Policy Change Endorsement that specifically "**Added**" the Property to the Policy, effective November 30, 2022.[30] That Markel later denied coverage on the basis that the Property had been vacant for more than 60 days—which, of course, Plaintiff is also disputing as

---

[30]  *See* Policy Change Endorsement. *See also* Ex. 5, Ex. 6.

a valid coverage denial in Count I of its litigation here—does not change the fact that Marsh

obtained the exact coverage that Plaintiff requested.

This is all that Marsh was required to do under Oklahoma law. An insurance broker must

"act in good faith and use reasonable care, skill and diligence in the procurement of insurance."

*Rotan v. Farmers Ins. Group of Cos.*, 83 P.3d 894, 895 (Okla. Civ. App. 2004) (quoting *Swickey*

*v. Silvey Cos.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999)). But caselaw is clear that a broker

discharges this duty by procuring "coverage mandated by law and coverage *for needs that are*

*disclosed by the insured*."[31] Importantly, a broker *does not have a duty to advise* the insured as

to the adequacy of the insured's policy coverage.[32] And when an insured does not specify

particular requests such as the duration or amount of coverage desired (here, the concern that the

Property might be "vacant" for more than 60 days) and an insurance provider furnishes coverage

as otherwise requested (here, adding the Property to the Policy), the broker's duty to exercise

reasonable care does not extend any further. *Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 149

(Okla. Civ. App. 2013) (dismissing agent because coverage request was fulfilled and further

rejecting invitation to extend duty to include providing an "adequate amount" of coverage).

The above discussion relates to Marsh's duty under Oklahoma law. But Oklahoma law

also imposes duties on Plaintiff, and it is undisputed that Plaintiff failed to satisfy those duties

here. Under Oklahoma law, an "insured has a duty to examine and read the contents of an

insurance policy before accepting and paying a premium and, having failed to do so, it *is*

*estopped from denying knowledge of its terms*." *Lincoln Nat. Life Ins. Co. v. Cowboy Athletics,*

*Inc.,* 934 F. Supp. 2d 884, 892 (N.D. Tex. 2012) (applying Oklahoma law) (emphasis added),

---

[31] *Id.*, ¶ 3 (emphasis added).

[32] *Id.*, ¶ 2.

*aff'd sub nom. Lincoln Nat. Life Ins. Co. v. Mgmt. Comp. Grp. Lee Inc.,* 532 F. App'x 480 (5th Cir. 2013) (citing *Smith v. Baptist Found. of Okla.,* 50 P.3d 1132, 1137–38 (Okla. 2002)). An insured is charged "with knowledge of the terms and legal effect of his insurance policy." *Vickers. v. Progressive N. Ins. Co.*, 353 F. Supp. 3d 1153, 1164 (N.D. Okla. 2018) (citing *Nat'l Fire Ins. Co. v. McCoy*, 205 Okla. 511, 239 P.2d 428, 430 (Okla. 1951)). *See also id.* Imposing liability to brokers in such cases would "turn[] the entire theory of insurance on its ear" by permitting insureds "to seek coverage for a loss after it occurred merely by asserting that they would have bought additional coverage if it had been offered." *Id.* To hold otherwise "would remove any burden from the insured to take care of his own financial needs and expectations . . . ." *Mueggenborg v. Ellis*, 55 P.3d 452, 454 (Okla. Civ. App. 2002).[33]

Here, it was Plaintiff's burden to read the Policy and to alert Marsh if it felt the Policy's 60-day vacancy condition was problematic because it felt it could not locate a new tenant or buyer for the Property (or otherwise ensure that the Property was not vacant under the terms of the Policy). Had Plaintiff asked Marsh to inquire with Markel about possible changes to this 60-day provision, Marsh would have had the duty to do so. But Plaintiff did not raise any issues regarding this coverage—to the contrary, Plaintiff's representatives testified that they had not read the relevant parts of the Policy, were not aware of vacancy exclusion, and relied on Marsh to instead read the Policy and provide unsolicited advice.[34]

---

[33] Other jurisdictions have confirmed this same rule applies even if the broker is aware of facts that may later give rise to such a need. For example, in *Rayfield Properties*, the court affirmed summary judgment to an insurance broker who, upon the insured's request, added a vacant property to the insured's existing policy which terminated coverage for theft if the property was left vacant for sixty days, even though the broker knew the property was vacant at the time it was added to the property. *Rayfield Properties, LLC v. Bus. Insurers of Carolinas, Inc.,* 224 N.C. App. 398 (2012) (unpublished but citable for persuasive value).

[34] *See* Ballenger Dep. at 21:11-14; Ex. 24 (hereafter, "Bates Dep.") at 121:5-15; Ex. 25 (hereafter, "Carroll Dep.") at 18:22-21:11.

Under Oklahoma law, Marsh had no duty to advise Plaintiff about potential coverage issues or changes. Without that obligation, Plaintiff's claim fails as a matter of law and summary judgment should be granted in Marsh's favor.

**B.      Plaintiff failed to provide the expert testimony required to establish the applicable standard of care and Marsh's alleged breach.**

As discussed above, the Court should bar Plaintiff's negligence claim against Marsh because (1) Marsh obtained the specific coverage requested and (2) Plaintiff, not Marsh, had the duty to review its Policy and seek additional coverage. The Court should grant summary judgment on this basis alone.

But Plaintiff's claim against Marsh also fails for a second, independent reason—under Oklahoma law, Plaintiff must provide expert testimony both to establish the standard of care applicable to Marsh and also whether Marsh's conduct falls below that standard. Here, however, Plaintiff made the tactical decision to not engage or disclose an expert.[35] Plaintiff consequently cannot satisfy its burden at trial regarding the standard of care or Marsh's alleged breach. Nor does Plaintiff dispute that it needs an expert—in its recent motion for an extension of the discovery schedule, Plaintiff conceded "that it must have an expert" in this litigation.[36]

A "standard of care, and whether its breach caused injury, is not within the common knowledge of the lay juror, it is ordinarily established by expert testimony." *Cook v. McGraw Davisson Stewart, LLC*, 496 P.3d 1006, 101 (Okla. Civ. App. 2021) (citing *Johnson v. Hillcrest Health Ctr., Inc.*, 70 P.3d 811 (Okla. 2003)). In Oklahoma, the "general rule is expert testimony is ordinarily necessary to establish causation in professional liability cases." *Boxberger v. Martin*, 552 P.2d 370, 373 (Okla. 1976). Where a party is without expert testimony to establish a

---

[35] *See* Dkt. 29.

[36] Dkt. 36. The Court denied Plaintiff's motion on September 5, 2023. Dkt. 38.

duty of care or the defendant's subsequent breach of that duty, a court properly grants summary judgment in favor of dismissing the defendant. *Id.* at ¶¶ 19-20 (holding that summary judgment was properly granted to defendant because claim required missing expert testimony).

The Tenth Circuit recently confirmed that the standard of care applicable to an insurance broker in a professional negligence claim, and the broker's alleged breach, requires expert testimony, and that summary judgment is appropriate when that support is missing. *Alabassi v. T.I.B. Ins. Brokers, Inc*., 825 F. App'x 593, 595 (10th Cir. 2020) (applying Colorado law).

In *Alabassi,* the Tenth Circuit affirmed summary judgment to an insurance broker after the plaintiff-insured failed to present expert testimony on whether the broker failed to use the standard of care applicable to insurance professionals when tasked with providing the insured with adequate coverage. *Id.* As a result, the insured could not meet its opening burden of proof. "When a claim of negligence is based on an allegation that a professional was negligent, the plaintiff must show that the professional's conduct fell below the standard of care associated with that profession." *Id.* (citation omitted). With the required expert testimony unavailable for the plaintiff to meet its burden, the claim against the insurance broker was unfit for trial and dismissed. *Id.*

Here, Plaintiff failed to engage an expert, and thus cannot meet its burden to establish (1) the appropriate standard of care for an insurance professional and (2) whether Marsh breached this standard. Because expert testimony is required, *Alabassi* dictates that Plaintiff's claim is unfit for trial and summary judgment should instead be awarded in Marsh's favor.

12

## II.  IF MARSH IS NOT DISMISSED, THEN THE COURT SHOULD EXCLUDE TWO CATEGORIES OF PLAINTIFF'S ALLEGED DAMAGES TO SIMPLIFY QUESTIONS FOR THE JURY AT TRIAL

Alternatively, if Marsh is not dismissed, the Court should still enter a decision barring Plaintiff from seeking two categories of damages that are precluded as a matter of law. First, Plaintiff claims it is entitled to recover damages based on preliminary estimates to repair the damaged Property. But Plaintiff never made any covered repairs, and now will never make any repairs because it sold the Property. Second, Plaintiff seeks attorney's fees, which are not available from Marsh in this litigation.

### A.  The Court should find that Plaintiff cannot pursue "damages" for (1) repairs that it never made and will never make and (2) attorney's fees.

As discovery has confirmed, Plaintiff is seeking two categories of damages that it cannot recover—(1) its costs to *repair* the Property and (2) its *attorney's fees* for bringing this suit against Marsh. The Court should find that neither category constitutes recoverable damages.

*First*, in written discovery, Plaintiff has claimed that its "best estimate" for damages "is approximately $1,305,181.55," which is based on an initial estimate that Plaintiff obtained to *repair* the Property.[37] Elsewhere, Plaintiff has pointed to a $650,000 *repair* estimate.[38]

But Plaintiff has not made *any* covered repairs to the Property.[39] And as of April 6, 2023, Plaintiff sold the Property to a third party, without any restrictions or conditions, and without making any covered repairs. As a result, while hypothetical repair costs may have been a valid damages theory when Plaintiff filed its complaint, that is no longer the case—such estimates are now and will always be irrelevant to Plaintiff's recoverable damages. Here, Plaintiff has not

---

[37] Ex. 23 at Interrogatory No. 1. *See also* Ex. 24 Bates Dep. at 167:19-168:15.

[38] Ex. 10.

[39] Plaintiff Dep. at 21:2-6, 78:14-24.

13

incurred costs for any necessary repairs and, having now sold the Property as-is to a third party without any restrictions or conditions, Plaintiff will never make any repairs to the Property. In light of these facts, which are undisputed and confirmed by Plaintiff's sworn testimony,[40] the Court should bar Plaintiff from seeking this category of damages.

**Second**, Plaintiff seeks its attorney's fees in this litigation from Marsh.[41] Again, the Court should hold that this category is barred as a matter of law.

Oklahoma follows "the American Rule as to the recovery of attorney fees. The Rule is generally that each litigant pays for their own legal representation, and our courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery." *HSRE-PEP I, LLC v. HSRE-PEP Crimson Park LLC*, 304 P.3d 461, 463 (Okla. Civ. App. 2013). Unless a statutory or contractual exception applies, a party cannot recover fees.

Neither exception applies here. Plaintiff has not alleged that any contract with Marsh contemplates fee-shifting, and Plaintiff brings a non-statutory, common law negligence claim against Marsh that provides no basis for fee-shifting. There is consequently no contractual or statutory claim to fees. Further, at deposition, Plaintiff could not identify any basis to recover fees from Marsh.[42]

In summary, the Court should hold that, as a matter of law, Plaintiff is barred from seeking (1) damages based on any "repair costs" for the Property it sold without incurring any repair costs, and (2) attorney's fees from Marsh.

---

[40] *See* Plaintiff Dep. at 21:2-6, 78:14-24; Bates Dep. at 172:13-18, 176:15-20, 177:2-4.

[41] Complaint, ¶ 15; Plaintiff Dep. at 80:11-16.

[42] Plaintiff Dep. at 82:11-18.

**B.    The Court should limit Plaintiff's recoverable damages to the value of the Property before the Loss, minus the value Plaintiff received in the sale of the Property.**

As discussed above, any repair estimates are irrelevant because Plaintiff sold the Property without making any covered repairs, and its damages cannot be premised on repair costs it will never make. Instead, the Court should find that Plaintiff's recoverable damages are simply the value of the undamaged Property and minus the sales proceeds that Plaintiff received.

While Marsh is not asking the Court to determine those amounts at the summary judgment stage, because both amounts are in dispute and are for the jury to determine, Marsh does ask the Court to enter an order limiting Plaintiff to this measure of damages.

**i.    Plaintiff listed the Property at $495,000 before the Loss, and Plaintiff testified this was the maximum damages that it was seeking in this litigation.**

For a period of almost four months prior to the Loss, Plaintiff listed the undamaged Property for $495,000.[43] This listing price was based on a recommendation from Plaintiff's real estate broker,[44] but did not elicit a single offer or result in a single showing during that time.[45]

While Marsh disputes that the undamaged Property was actually worth $495,000, as confirmed by the fact that Plaintiff received no offers or interest in the Property at this price, it is undisputed that the Property was not worth *more* than this amount. Indeed, as Plaintiff's President testified during his deposition:

Q:  "Did you think that [the Property] was worth more than $495,000 as of October of 2020?"

**A:  "No."**

---

[43] Ex. 12.

[44] Plaintiff Dep. at 25:3-23.

[45] Ex. 13; Plaintiff Dep. at 28:1-30:16 (confirming reported real estate broker activity).

Q: "Did you think that [the Property] was worth less than $495,000?"

**A: "I have no idea . . . ."**[46]

The Court should now hold that Plaintiff is bound by this testimony, which provides an independent reason to bar Plaintiff from seeking damages based on estimated repair costs.

> ii. **During this litigation, Plaintiff sold the damaged Property and received over $118,000 in value.**

After the Loss, Plaintiff relisted the Property at the lowered price of $100,000.[47] It received an offer shortly thereafter for the asking price, with the prospective buyer taking the Property "as is, where is[.]"[48] Had Plaintiff accepted this offer, then its maximum recoverable damages would have been fixed—assuming the $495,000 were a valid price for the undamaged Property, then after recovering $100,000 in the sale, Plaintiff's maximum recoverable damages would be $395,000. However, Plaintiff rejected this $100,000 offer, citing both this lawsuit and Plaintiff's outstanding coverage claim to Markel as its basis for rejecting the offer.[49]

Subsequently, Plaintiff received another offer to purchase the Property as-is, where-is, but as part of a larger transaction involving three other Plaintiff-owned properties.[50] The sale price for the entire package was $5.4 million. The sale did not include any conditions or restrictions relating to the Property, such as Plaintiff's pending insurance claim, the Property's

---

[46] Bates Dep. at 46:5-9. *See also* Plaintiff Dep. at 31:8-13 (confirming prior Bates testimony).

[47] Ex. 14.

[48] Ex. 15 (real estate broker conveying $100,000 offer for Property as-is), Ex. 16, Ex. 17, Ex. 18 (Plaintiff reporting "$100,000" buyer for Property "as is-where is").

[49] Ex. 16, Ex. 17, Ex. 18, Ex. 19 (Plaintiff informing real estate broker that $100,000 offer could not be accepted "until lawsuits are resolved").

[50] Ex. 20, Ex. 21.

possible demolition costs, this pending litigation, or anything else that would affect the value of the Property within the transaction.[51]

The formal sale documents do not separate out the Property's individual value as part of the $5.4 million total sale. However, internal documents from both the buyer and Plaintiff reveal that they both set its value at over $118,000.

First, the buyer valued the damaged Property at $119,303.[52] This amount should be dispositive, because the measure of fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts." *United States v. Cartright*, 411 U.S. 546, 551 (1973) (citation omitted). Here, both parties knew that the Property was damaged, neither was under any compulsion to buy or sell (Plaintiff had declined an earlier offer for a similar amount for the Property), and the buyer knew the Property was damaged. Under all these circumstances, the buyer assessed the value of the Property to be $119,303.

Second, Plaintiff's own documents reveal that it internally valued the damaged Property at $118,800, which was based on Tulsa County's tax assessment of the value of the land.[53] However, Plaintiff subtracted $54,000 for what it thought it would cost to demolish the building, so its internal documents reflect a "net" value of $64,800.[54] Of course, Plaintiff did not demolish the building, and because the Property was sold "as-is" without any restrictions or conditions, whatever costs the buyer may eventually incur (from either repairing or demolishing the

---

[51] Ex. 20, Ex. 21, Ex. 22. *See also* Plaintiff Dep. at 21:2-6, 78:14-24; Bates Dep. at 172:13-18, 176:15-20, 177:2-4.

[52] Ex. 22.

[53] Ex. 21.

[54] Ex. 21. *See also* Plaintiff Dep. at 65:16-19 (testifying that Plaintiff never obtained an estimate for demolishing the building).

building), will have no impact on Plaintiff. As a result, Plaintiff received value over $118,000

when it sold the damaged Property.

> iii.   **The Court should hold that the proper measure of damages is the value of the undamaged Property less the value that Plaintiff received when selling the damaged Property.**

At trial, the parties will dispute the original value of the undamaged Property, and will

dispute the value that Plaintiff received when it sold the damaged Property. But what is

undisputed is that the measure of Plaintiff's recoverable damages should be limited to the value

of the undamaged Property less the value that Plaintiff received when selling the damaged

Property. Indeed, Plaintiff's President confirmed that the maximum damages that Plaintiff is

seeking is the $495,000 at which it listed the Property before the Loss, rather than any other

measure of damages (such as repair cost estimates):

> Q:  "Is [$495,000] the measure of damages that you're seeking from Marsh?"
>
> A:  **"I agree with that."**
>
> Q:  "What measure of damages are you seeking from Markel in this case?"
>
> A:  **"I think we're seeking 495 from somebody."**[55]

Again, determining Plaintiff's actual damages is for the jury. But to streamline issues for

trial, the Court should hold that Plaintiff is limited to this measure of damages, and preclude any

argument regarding damages that Plaintiff cannot recover as a matter of law.

This Court's precedent confirms the limits of Plaintiff's damages. In *Truesdell*, the

insured suffered property damage and had its claim denied. *Truesdell v. State Farm Fire & Cas.

Co*., 960 F. Supp. 1511, 1519 (N.D. Okla. 1997). While litigation over its coverage claim was

pending and before it undertook any repairs, the property was sold. *Id.* The litigation involved

---

[55] Bates Dep. at 180:19-24. *See also id*. at 46:5-7; Plaintiff Dep. at 84:16-85:13.

both the insured's damages and the recoverable interest of the property's mortgagee. *Id.*
Pertinent here, this Court held that the home's sale and the lack of actual repair costs served to
limit the mortgagee's recovery to only the mortgage balance. *Id.* at 1518. To hold otherwise
would permit unjust enrichment to the insured (or its mortgagee) in the form of a double
recovery under the post-loss circumstances, "which is not favored under insurance law or the law
of Oklahoma." *Id.*

Similarly, Plaintiff here (1) admits it made no repairs to the Property that would have
been otherwise covered under the Policy and (2) subsequently sold the Property as-is. To permit
recovery above the drop in value experienced in its recent sale because of the Loss would
unjustly enrich Plaintiff and result in an unwarranted windfall. The Court should therefore find
that Plaintiff is limited to damages based on the difference in value.

## CONCLUSION

The Court should grant summary judgment in favor of Marsh on liability and dismiss it
with prejudice. Oklahoma law does not recognize the heightened duty required for Plaintiff to
bring its claim that Marsh failed to adequately advise it on insurance matters. Further, even if
Plaintiff could bring its claim, it lacks the necessary expert support at trial.

Should the Court not dismiss Marsh, then it should still limit Plaintiff's recoverable
damages and hold that it is not entitled to repair costs or fee shifting under any circumstances.
Finally, the Court should hold that Plaintiff's recoverable damages are limited to the value of the
undamaged Property less the value Plaintiff received for selling the damaged Property.

Dated September 11, 2023                    *s/ Barrett L. Powers*

**GABLEGOTWALS**

R. Trent Shores, OBA #19705
tshores@gablelaw.com
Barrett L. Powers, OBA #32485
bpowers@gablelaw.com
110 N. Elgin Ave., Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800 | Fax: (918) 595-4990

**QUARLES & BRADY LLP**

Joshua Maggard *(pro hac vice)*
Joshua.maggard@quarles.com
Joseph Poehlmann (*pro hac vice*)
joseph.poehlmann@quarles.com
411 East Wisconsin Avenue, Suite 2400
Milwaukee, Wisconsin 53202
(414) 277-5000 | Fax: (414) 271-3552

***Attorneys for Defendant Marsh USA, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Frank W. Frasier
frasier@tulsa.com

Roger N. Butler, Jr.
rbutler@secresthill.com

Nathaniel T. Smith
nsmith@secresthill.com

*s/ Barrett L. Powers*
Barrett L. Powers

21